FILED
CLERK

March 16, 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
LISA AAMODT, ROSEANN BARRAGATO-CASTRO,
NICOLE BUCCELLATO, PATRICIA KARAMSINGH,
LAURA (FRANZINI) LEON, SUZANNE MENDONCA,
SUSAN PETERSON, MICHELLE ROBERTSON,
THERESA SCHILL, CHARTAYE THOMPSON,
STEPHANIE TOWNE, EMILY WANGELIN,
FRANCINE TORTORELLA, JOANNE WALSH,
TANYA BARON, THOMAS CAGGIANO, HEATHER
CELLUCCI, CRISTINA GIGLIO, RAQUEL KLUCZKA,
JEAN LUBRANO, WILLIAM WALSH, CHRISTINA
BARBERA, JOHN BARKER, MICHAEL BUTCHER,
ANDREA DAMELE, ASHLEY DARA, LLIRINA
MELENDEZ, MATTHEW ROHDE, TAMI SANTANA,
PATRICK TARANTO, PATRICK TRUPIANO,
MARINA COPERTINO, LISA (BURGREEN) FLORES,
EMILY JOY, JESSICA MISTRETTA and ANNA MARIE
MORAN,

                Plaintiffs,

  -against-

COUNTY OF NASSAU,

               Defendant.
---------------------------------------------------------------X

**MEMORANDUM**
**DECISION AND ORDER**
2:22-CV-01520-JMW

**A P P E A R A N C E S:**

Louis D. Stober, Jr.
**Law Offices of Louis D. Stober, Jr., LLC**
98 Front Street
Mineola, NY 11501
*For All Plaintiffs*

Deanna Darlene Panico
**Bee Ready Fishbein Hatter & Donovan, LLP**
170 Old Country Road, Suite 200
Mineola, NY 11501
*For All Defendant*

1

Magistrate Judge:

## I.     BACKGROUND

This motion for settlement approval presents a pleasant case of déjà vu. In 2021, this Court approved a $3,000,000.00 settlement between Police Communications Operators ("PCOs"), Police Communications Operator Supervisors ("PCOSs"), and the County of Nassau (the "County") for claims of unpaid wages under the Fair Labor Standards Act ("FLSA").[1] *See Chodkowski v. Cnty. of Nassau*, No. 16-CV-5770 (JMW), 2021 WL 3774187 (E.D.N.Y. Aug. 25, 2021). The plaintiffs in *Chodkowski* alleged that their seven-week "tour cycle" as emergency 911 dispatchers, pursuant to a 1994 Memorandum of Understanding between their union and the County, required them to work an extra day—known as "MUD" days—every seventh week, pushing their time worked to 44 hours for those weeks. 2021 WL 3774187 at *1. Plaintiffs alleged that the County failed to properly compensate them for this overtime work, and that, additionally, the County incorrectly calculated the compensation rate used when it did compensate plaintiffs for their overtime work. *Id.*

*Chodkowski* was a collective action in which over 200 PCOs and PCOSs opted-in as plaintiffs to be part of the settlement.[2] *Id.* Unfortunately, a small group of PCOs were left out. That is where this action comes in. This action is brought by 36 PCOs who were hired *after* the opt-in period in *Chodkowski* had already closed and thus were unable to participate in the

---

[1] *See* 29 U.S.C. § 201 et seq.

[2] As of January 11, 2023, the settlement in *Chodkowski* has received approval from the Nassau County Legislature (a negotiated term of the deal) and all settlement payments required under the settlement agreement have been paid. *See Chodkowski v. Cnty. of Nassau*, No. 16-CV-5770 at DE 173. All that remains is for Nassau County to determine whether back payments are due because of delays in implementing certain employment conditions agreed upon in the settlement. *Id.* Then the case will be closed.

2

settlement.[3] (DE 1.)  Plaintiffs' claims here are identical to those in *Chodkowski*. (*Id.*)  The settlement reached in this case will provide these 36 Plaintiffs with the exact settlement amounts they would have received had they been included in the *Chodkowski* settlement.  (*See* DE 22-23.)

Following extensive settlement discussions, on August 16, 2022, Plaintiffs moved in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), for approval of the parties' settlement agreement.  (DE 22-23.)  Upon review of the motion, the Court instructed the parties to supplement their submission and provide further information concerning the bona fides of this dispute, the County's potential exposure to Plaintiffs, Plaintiffs' estimated possible maximum recovery, the parties' probability of success on the merits, and other *Wolinsky* factors.  (*See* Electronic Order, dated Aug. 24, 2022) (citing *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) ("*Wolinsky* Factors").  On August 30, 2022, Plaintiffs' counsel submitted supplemental information in compliance with the Court's order.

All parties have signed a consent form, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, granting this Court power to conduct all proceedings in this matter and enter final judgement.  (DE 21.)  For the following reasons, the motion for settlement approval is GRANTED.

## II.  STANDARD FOR APPROVING FLSA SETTLEMENTS

Federal Rule of Civil Procedure 41 provides, in relevant part, that:

---

[3] The 36 Plaintiffs include Lisa Aamodt, Roseann Barragato-Castro, Nicole Buccellato, Patricia Karamsingh, Laura (Franzini) Leon, Auzanne Mendonca, Susan Peterson, Michelle Robertson, Theresa Schill, Chartaye Thompson, Stephanie Towne, Emily Wangelin, Francine Tortorella, Joanne Walsh, Tanya Baron, Thomas Caggiano, Heather Cellucci, Cristina Giglio, Raquel Kluczka, Jean Lubrano, William Walsh, Christina Barbera, John Barker, Michael Butcher, Andrea Damele, Ashley Dara, Llirina Melendez, Matthew Rohde, Tami Santana, Patrick Taranto, Patrick Trupiano, Marina Copertino, Lisa (Burgreen) Flores, Emily Joy, Jessica Mistretta and Anna Marie Moran.

3

> Subject to . . . any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
> (i)      a notice of dismissal before the opposing party serves either an answer of a motion for summary judgment; or
> (ii)     a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1)(A).

In *Cheeks*, the Second Circuit held that the FLSA is an "applicable federal statute" under Rule 41 because of "the unique policy considerations underlying" the act. 796 F.3d at 206. Such considerations include the laudable aim of "'extend[ing] the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *Id*. (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)). Accordingly, in this Circuit, Rule 41's "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Id*.

"Generally, if the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved" by the reviewing court. *Ceesae v. TT's Car Wash Corp.*, 17 CV 291 (ARR) (LB), 2018 WL 1767866, at *2 (E.D.N.Y. Jan. 3, 2018) (internal quotation marks and citation omitted) *report and recommendation adopted by* 2018 WL 741396 (Feb. 7, 2018). In reviewing the reasonableness of the proposed settlement, courts consider the totality of the circumstances, including relevant factors such as:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky*, 900 F. Supp. 2d at 335 (internal quotation marks and citations omitted).

Factors weighing *against* settlement approval include:

4

>(1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Id*. (internal quotation marks and citations omitted).

Even if an application of the *Wolinsky* Factors demonstrates that the agreement is reasonable, the court must also consider whether the settlement "complies with the Second Circuit's admonitions as articulated in *Cheeks*." *Ezpino v. CDL Underground Specialists, Inc.*, 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *1 (E.D.N.Y. June 30, 2017) (citation omitted), *report and recommendation adopted by* 2017 WL 3037406 (E.D.N.Y July 17, 2017). Specifically, courts should guard against "highly restrictive confidentiality provisions," overbroad releases that "would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," and "a[ny] provision that would set the fee for plaintiff's attorney . . . without adequate documentation." *Cheeks*, 796 F.3d at 206 (citation omitted). Related to the final admonition, courts must also ensure that any attorney's fees provided for in the agreement are reasonable. *See* 29 U.S.C. § 216(b) ("The Court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a *reasonable* attorney's fee to be paid by the defendant, and costs of the action."); *see also Ceesae*, 2018 WL 1767866 at *2 (noting that courts engaging in a *Cheeks* review must "evaluate[] the reasonableness of any attorney's fees included in the proposed settlement") (citing 29 U.S.C. § 216(b)).

Against this backdrop, the Court reviews the proposed settlement and motion.

5

### III.    DISCUSSION

Though this action is only a year old, it is born from a litigation with a long and complex history.  The parties in *Chodkowski* litigated the very same issues raised in the complaint here for nearly five years before settlement was approved.  *See Chodkowski*, 2021 WL 3774187 at *1.  The parties went through a lengthy discovery period, certification of the collective action, summary judgment briefing, three mediations, and a judicial settlement conference before settlement with terms identical to the ones here were reached.  *Id.*

Even so, the *Aamodt* parties still waded through discovery, a proposed motion to dismiss, and extensive settlement discussions to reach the settlement presented here today.  (*See* DE 22.)  The proposed settlement agreement was fully executed on August 11, 2022, and filed with the Court for approval ("Settlement Agreement").  (*Id.*)  Thereunder, the total settlement amount is $41,750, with $21,750 to be paid to Plaintiffs based on their years of service and $20,000 to be paid to Plaintiffs' counsel for fees and costs.  (*Id.*)  Based on the payout schedule first formulated and agreed to in *Chodkowski,* 21 Plaintiffs who have 4 years of service will receive $1,000 each and the remaining 15 Plaintiffs who have 2 years or less of service will receive $50 each.  (DE 22; *see* DE 22-1.)  For the reasons set forth below, the Court finds that the monetary and non-monetary terms of the settlement are both fair and reasonable under *Cheeks*.

***Reasonableness of the Settlement***

Having reviewed the submissions—Plaintiffs' letter motion and supplemental filings, declaration of Plaintiffs' counsel, and the proposed Settlement Agreement—the Court finds that the five *Wolinsky* Factors weigh in favor of approval.

*First*, the Settlement Agreement provides for a total payment of $41,750, of which $21,750 will be distributed amongst Plaintiffs in proportion to their years of service according to

the payment schedule approved in *Chodkowski*. (DE 22.) The *Chodkowski* settlement considered that Plaintiffs alleged the County's FLSA violations were willful and a damages award at trial would allow Plaintiffs to look back three years and collect liquidated damages, doubling the damages for the unpaid overtime. *Chodkowski*, 2021 WL 3774187 at *4. It also considered service fees allotted to compensate Plaintiffs for their efforts in pursuing the action and putting their name at risk for retaliation. *Id.* This Court found these terms reasonable. *Id.* Here, Plaintiffs contend that they were specifically seeking the exact same payment as their counterparts in the *Chodkowski* action and therefore this settlement provides each of them with 100% of what they would receive if they prevailed in this litigation. (DE 24.) Plaintiffs believe this settlement is a reasonable compromise in light of several contested issues raised in this litigation. (DE 22.) This factor weighs in favor of approval.

*Second*, the Court agrees with Plaintiffs that settlement will avoid extensive litigation costs and anticipated burdens and expenses in establishing their respective claims and defenses. (*See* DE 24.) Plaintiffs points out that it took over four years to complete discovery and get to the summary judgment stage in *Chodkowski*. (*Id.*) Plaintiffs anticipate that it would take approximately two years to complete discovery and motion practice in this case. (*Id.*) Therefore, reaching this settlement here prevents the parties from having to expend a tremendous amount of time and resources on discovery and motion practice. The proposed settlement allows the parties to avoid inevitable burdens and expenses in the years it would take to ultimately bring this matter to trial. Thus, this factor weighs in favor of approval.

*Third*, settlement is a means of avoiding significant litigation risks for both sides. Here, Plaintiffs state that the strength of their case faces two issues which could result in zero recovery for Plaintiffs. The first is a factual dispute concerning a series of 30-minute breaks each PCO

7

received.  (*Id.*)  One of the County's defenses to Plaintiffs' claims is that if these breaks occurred, the PCOs only worked 36 hours and thus do not meet the FLSA threshold.  (*Id.*)  The second issue concerns the PCO's training period.  (*Id.*)  PCOs do not work a MUD-day schedule until after their one year of training.  (*Id.*) During training, PCOs work little to no overtime while in training, which can exceed one year.  (*Id.*)  If the County is successful in establishing either of these facts, Plaintiffs could be prevented from any recovery.  As to the County's risk, the County is faced with possibly having to pay Plaintiffs the same monies that they paid to the similarly situated *Chodkowski* plaintiffs.  Recognizing these risks, the parties have agreed that replicating the *Chodkowski* settlement mitigates the risks facing all parties.  The Settlement Agreement reflects a compromise between Plaintiffs and the County to avoid the inherent risks of litigation.  This factor weighs in favor of approval.

*Fourth*, the Court finds that the parties have properly engaged in bargaining at arms-length to reach the Settlement Agreement.  All parties are represented by counsel.  In fact, Plaintiffs' and the County's counsel are the same attorneys that represented the parties in the *Chodkowsi* matter.  It is safe to say that counsel for both sides are not only well experienced in this area of law but also have a unique command of these very facts.  As Plaintiffs' counsel puts it, "counsel on both sides are seasoned veterans of these FLSA wars." (DE 24.)  And although the parties here did not partake in formal mediation, these identical issues and the resulting settlement was reached as a product of three mediations and a judicial settlement conference. *See Chodkowski*, 2021 WL 3774187 at *1.  This factor weighs in favor of approval.

*Fifth*, the parties and counsel negotiated in good faith and agreed upon the terms within the Settlement Agreement.  (*Id.*)   The parties have agreed to a sum that this Court has previously

held was fair and reasonable. The record bears no signs that this settlement is a product of fraud, coercion, or collusion. This factor weighs in favor of approval.

Turning to the *Wolinsky* factors which weigh against settlement, for the reasons to follow, the factors do not compel rejection of the proposed settlement.

*First*, it is unlikely that there are other employees similarly situated to Plaintiffs. Indeed, the *Chodkowski* matter was a collective action which permitted over 200 employees to opt-in, and the entire purpose of this action is to obtain relief for the 36 individuals who missed out on the opt-in period. Plaintiffs confirm that as a result of this settlement, all potential plaintiffs have now been accounted for. (DE 24.)

*Second*, it is unlikely Plaintiffs' circumstances will reoccur. As a product of the *Chodkowski* and the instant settlement there is a new Memorandum of Understanding in play that eliminates the eight 12-hour MUD days and instead creates twelve 8-hour MUD days, effective January 28, 2022, the cut-off date for damages herein. Accordingly, Plaintiffs contend that the issues in this litigation can never reoccur. (DE 24.)

*Third*, the history of non-compliance by the County will conclude with this settlement because as a result of the *Chodkowski* and the instant settlement, the FLSA issues for all PCOs in the Nassau County Police Department will have been resolved. (*Id.*) Further, the Settlement Agreement provides a carve out for any existing litigation between the parties that is still ongoing.

*Fourth*, the desirability for a mature record is weak. As previously described, many of the issues here were more properly fleshed out in the nearly five-year litigation in *Chodkowski*. That action went through discovery through summary judgment motion practice. There is nothing that can be identified here that would require a more developed record.

Lastly, the proposed Settlement Agreement does not contain any of the problematic provisions that are flagged in *Cheeks*. First, it contains no confidentiality provision. (DE 22-2.) Second, while the Settlement Agreement contains a release, it is not overbroad. The release merely precludes future lawsuits and duplicative damages arising out of Plaintiffs' overtime claims asserted here which, under the Settlement Agreement, they will be compensated for. An identical release was already approved by this Court in *Chodkowski*. *See* 2021 WL 3774187 at *5.

Considering the above factors, the Court finds the settlement to be fair and reasonable.

***Attorneys' Fees***

"In an FLSA case, the Court must independently ascertain the reasonableness of the fee request." *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229–30 (S.D.N.Y. 2016) (citation omitted). When considering applications for attorneys' fees, Courts employ the lodestar method. *Kazadavenko v. Atl. Adult Day Care Ctr. Inc.*, No. 21 CV 3284 (ENV) (LB), 2022 WL 2467541, at *4 (E.D.N.Y. Apr. 14, 2022). The lodestar calculation, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case," "creates a presumptively reasonable fee." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

Courts may also employ the "percentage of the fund" method which permits attorneys to recover a percentage of the settlement amount via a previously determined contingency fee. *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417-19 (2d Cir. 2010). Courts in this Circuit routinely approve of one-third contingency fees for FLSA cases. *Lai v. Journey Preparatroy Sch., Inc.*, No. 19 CV 2970 (CLP), 2022 WL 3327824, at *3 (E.D.N.Y. May 26, 2022) ("With this method, courts in this Circuit have routinely found an award representing one-third of the settlement amount to be reasonable"); *Kazadavenko*, 2022 WL 2467541 at *4 (collecting cases).

However, even where fees are reasonable when analyzed under the percentage method, courts will additionally perform a lodestar "cross-check" and "compare the fees generated by the percentage method with those generated by the lodestar method." *Mobley v. Five Gems Mgmt. Corp.*, 17 Civ. 9448 (KPF), 2018 WL 1684343, at *4 (S.D.N.Y. Apr. 6, 2018) (citations omitted).

Critically, "[t]he fee applicant must submit adequate documentation supporting the requested attorneys' fees and costsFisher v. SD Prot. Inc., 948 F.3d 593, 600 (2d Cir. 2020); *Wolinsky*, 900 F. Supp. 2d at 336 ("In the Second Circuit, that entails submitting contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done"). "[E]ven when the proposed fees do not exceed one third of the total settlement amount, courts in this circuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees." *Navarro Zavala v. Trece Corp.*, No. 18-CV-1382 (ER), 2020 WL 728802, at *2 (S.D.N.Y. Feb. 13, 2020) (quotation and citation omitted). In utilizing the lodestar approach, courts multiply the number of hours spent on a case by an attorney's reasonable hourly rate. *Millea*, 658 F.3d at 166.

Here, Plaintiffs' counsel requests $20,000 out of the $41,750 settlement. (DE 22- 24.) This figure encompasses both fees and costs. Despite this $20,000 request, Plaintiffs' counsel has actually incurred $41,771.36 in fees, costs and disbursements as of August 11, 2022. (DE 22, DE 22.) Plaintiffs' counsel has submitted contemporaneous billing records which demonstrate that Plaintiffs' counsel has spent 63.50 hours at $650 per hour over five months of working on the matter from commencement through finalization of the settlement. (DE 23-1.) Further, Plaintiffs' counsel incurred $496.36 in costs which the Court finds were incidental and necessary to represent Plaintiff and reach a settlement in this matter. *See In re Indep. Energy*

11

*Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients") (internal quotation marks omitted).

As a compromise to bring this matter to a speedy resolution, Plaintiffs' counsel has agreed to reduce his costs and fees by 50%, reducing his fee from $41,275 to $20,000. (DE 23.) By doing so, Plaintiffs' counsel has effectively reduced his rate to $314.96 per hour for his work, a significant discount from his usual rate of $650 per hour. (*Id.*) This is especially generous considering Plaintiffs' counsel's years of experience in successfully litigating FLSA cases and his particularized knowledge and experience of the issues in this case. The $314.96 hourly rate applied here falls within the rates ordinarily accepted as reasonable for law firm partners in this district and is therefore fair and reasonable. *See, e.g.*, *Li v. Chang Lung Grp. Inc.*, No. 16 Civ. 6722 (PK), 2020 WL 1694356, at *15 (E.D.N.Y. Apr. 7, 2020) (noting that $300 to $450 is range of reasonable hourly rates for partners in FLSA cases within the Eastern District of New York). Further, the Court finds the overall number of hours exerted on this matter to be reasonable in light of the complex issues presented by this FLSA case and its unique relation to the *Chodkowski* matter.

Having reviewed the statements and billing records of Plaintiffs' counsel, the Court also finds the proposed attorneys' fees fair and reasonable after performing a lodestar cross-check. Multiplying $314.96 per hour by 63.50 hours worked yields a lodestar of $19,999.96. The lodestar amount ($19,999.96) is functionally equivalent to the amount in fees counsel seeks ($20,000). Accordingly, the lodestar cross-check affirms that the requested attorney's fee of $20,000 is fair and reasonable in this case.

## IV. CONCLUSION

For the foregoing reasons, the parties' motion for approval of the Settlement Agreement is GRANTED. Accordingly, Plaintiffs' claims are DISMISSED WITH PREJUDICE. The parties shall file a Stipulation of Dismissal with Prejudice on or before April 17, 2023, and the Court will direct the Clerk's Office to close this case thereafter.

Dated: Central Islip, New York
March 16, 2023

S O  O R D E R E D:

/s/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge

13